# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

DEANGELO GALES,

    Plaintiff,

v.

COMMISSIONER HOMER BRYSON;
GREGORY C. DOZIER; WARDEN TOM
GRAMIAK; and DERRICK MCKINNEY,

    Defendants.

CIVIL ACTION NO.: 5:15-cv-65

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at Ware State Prison in Waycross, Georgia, submitted a Complaint in the above captioned action pursuant to 42 U.S.C. § 1983. (Doc. 1.) For the reasons which follow, I **RECOMMEND** that the Court **DISMISS** all monetary damages claims against Defendants in their official capacities and all claims for punitive and compensatory damages. However, Plaintiff arguably sets for plausible claims for injunctive relief and nominal damages for violation of his due process rights. Accordingly, these claims will proceed, and the United States Marshal is **DIRECTED** to serve Defendants with a copy of Plaintiff's Complaint. Nonetheless, the Court should **DENY** Plaintiff's claim for preliminary injunctive relief.

## BACKGROUND

Plaintiff filed this action contesting certain conditions of his confinement. Specifically, Plaintiff contends that Defendants have violated his rights to due process by placing him in the Tier II administrative segregation unit ("Tier II Unit") as a result of his being labeled a member of the Goodfellas gang. (Doc. 1, p. 5.) Plaintiff alleges that he is not a member of the gang and

that he has not been provided with a hearing to contest his placement. Plaintiff contends he has been on "lockdown" for 892 days and has not been told that his placement is indefinite. (Doc. 1-3.) He also contends that his placement is a result of a policy decision by Defendants Bryson and Dozier and carried out by the other Defendants regarding all suspected Goodfellas members. Id. Plaintiff states that his conditions in the Tier II Unit differ significantly than the conditions in the general population including limited recreation and time outside of his cell, limited access to the law library and legal materials, a lack of procedure for challenging disciplinary actions, limited phone calls and contact visits, and more frequent strip searches. (Doc. 1-2.)

**STANDARD OF REVIEW**

Plaintiff seeks to bring this action *in forma pauperis* under 42 U.S.C. § 1983. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . .

a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We

have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

**DISCUSSION**

As an initial matter, this Court must give deference to prison officials on matters of prison administration and should not meddle in issues such as the contents of a prisoner's file. Courts traditionally are reluctant to interfere with prison administration and discipline, unless there is a clear abuse of discretion. See Procunier v. Martinez, 416 U.S. 396, 404–05 (1974) ("Traditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration [because] . . . courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform."), *overruled on other grounds by* Thornburgh v. Abbott, 490 U.S. 401 (1989). In such cases, "[d]eference to prison authorities is especially appropriate." Newman v. State of Ala., 683 F.2d 1312, 1320–21 (11th Cir. 1982) (reversing district court's injunction requiring release of prisoners on probation because it "involved the court in the operation of the State's system of criminal justice to a greater extent than necessary" and less intrusive equitable remedy was available); see also Thornburgh, 490 U.S. at 407–08 ("Acknowledging the expertise of these officials and that the judiciary is 'ill equipped' to deal with the difficult and delicate problems of prison management, this Court has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world."); Bell v. Wolfish, 441 U.S. 520, 547 (1979) (acknowledging that courts have "accorded wide-ranging deference [to prison administrators] in adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."); Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 129 (1977) ("Prison officials

must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry."); Bradley v. Hart, No. CV513-127, 2015 WL 1032926, at *10 (S.D. Ga. Mar. 9, 2015) ("It does not appear to be appropriate for this Court to order that prison officials remove entries from Plaintiff's file, which may or may not be accurate.").

Further, in order to state a claim for relief under Section 1983, a plaintiff must satisfy two elements. First, a plaintiff must allege that an act or omission deprived him "of some right, privilege, or immunity secured by the Constitution or laws of the United States." Hale v. Tallapoosa Cty., 50 F.3d 1579, 1582 (11th Cir. 1995). Second, a plaintiff must allege that the act or omission was committed by "a person acting under color of state law." Id. Plaintiff alleges that Defendants have violated his due process rights by placing him and keeping him in the Tier II Unit.

## I. Claims for Monetary Damages Against Defendants in Their Official Capacities

Plaintiff cannot sustain a Section 1983 claim for monetary damages against Defendants in their official capacities. States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty. Alden v. Maine, 527 U.S. 706, 712–13 (1999). Section 1983 does not abrogate the well-established immunities of a state from suit without its consent. Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989). Because a lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such a defendant is immune from suit under Section 1983. Id. at 71. Here, the State of Georgia would be the real party in interest in a suit against Defendants in their official capacities as employees of the Georgia Department of Corrections. Accordingly, the Eleventh Amendment immunizes these actors from suit in their official capacities. See Free v. Granger,

887 F.2d 1552, 1557 (11th Cir. 1989). Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims against Defendants in their official capacities for monetary relief. The Court should **DISMISS** these claims.[1]

## II. Dismissal of Compensatory and Punitive Damages Claims

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The purpose of this statute is "to reduce the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (citing Harris v. Garner, 216 F.3d 970, 976-79 (11th Cir. 2000)). "Tracking the language of [this] statute, § 1997e(e) applies only to lawsuits involving (1) Federal civil actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody." Id. at 532.

In Williams v. Brown, 347 F. App'x 429, 436 (11th Cir. 2009), the Eleventh Circuit stated that, "compensatory damages under § 1983 may be awarded only based on actual injuries caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated. Pursuant to 42 U.S.C. § 1997e(e), in order to

---

[1] The Court also forewarns Plaintiff that Section 1983 liability must be based on something more than a defendant's supervisory position or a theory of respondeat superior. Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Employment Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Id. at 802. "To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011). However, at this early stage, it does not appear Plaintiff has named Defendants based solely on their positions. Rather, he contends that they were directly involved in the violations of his rights or that the violation was a result of a policy enacted by Defendants.

recover for mental or emotional injury suffered while in custody, a prisoner bringing a § 1983 action must demonstrate more than a *de minim[i]s* physical injury." Id. (internal citations omitted) (alterations in original). Consequently, a prisoner that has not suffered any physical injury cannot recover compensatory or punitive damages. Al-Amin v. Smith, 637 F.3d 1192, 1199 (11th Cir. 2011) ("In sum, our published precedents have affirmed district court dismissals of punitive damage claims under the PLRA because the plaintiffs failed to meet § 1997e(e)'s physical injury requirement."); Smith v. Allen, 502 F.3d 1255, 1271 (11th Cir. 2007) ("Plaintiff seeks nominal, compensatory, and punitive damages. It is clear from our case law, however, that the latter two types of damages are precluded under the PLRA."), *abrogated on other grounds by* Sossamon v. Texas, 563 U.S. 277 (2011).

However, the Eleventh Circuit has also stated that "[n]ominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages." Williams v. Brown, 347 F. App'x at 436 (quoting Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003)). "Thus, a prayer for nominal damages is not precluded by § 1997e(e)." Id. (quoting Smith v. Allen, 502 F.3d at 1271.

In this case, Plaintiff has not alleged that he has suffered any physical injury due to Defendants' alleged constitutional violations. Accordingly, the Court should **DISMISS** his claims for compensatory and punitive damages pursuant to 42 U.S.C. § 1997e(e). However, Section 1997e(e) does not bar Plaintiff's claims for nominal damages or injunctive relief, and those claims will proceed.

### III. Due Process Claims

#### A. Procedural due process

An inmate states a cognizable claim for the deprivation of his procedural due process rights under the Fourteenth Amendment when he alleges the deprivation of a constitutionally protected liberty or property interest, state action, and constitutionally inadequate process. Shaarbay v. Palm Beach Cty. Jail, 350 F. App'x 359, 361 (11th Cir. 2009) (citing Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994)). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556, (1974). Rather, "a disciplinary proceeding, whose outcome will 'impose[ ] atypical and significant hardship on the inmate' must ensure the following due process rights: (1) advance written notice of the claimed violation, (2) a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken, and (3) an opportunity to call witnesses and present documentary evidence in his defense." Asad v. Crosby, 158 F. App'x 166, 173 (11th Cir. 2005) (citing Wolff, 418 U.S. at 563–67).

This Court has held that an inmate's placement in administrative segregation is ordinarily a non-punitive action. Bradley v. Hart, No. CV513-127, 2015 WL 1032926, at *5 (S.D. Ga. Mar. 9, 2015), appeal dismissed (July 8, 2015). However, Plaintiff has alleged facts that could plausibly establish that his placement in the Tier II unit was punitive in nature. Additionally, Plaintiff has arguably alleged that his placement in the Tier II Unit has resulted in an atypical or significant hardship. Further, Plaintiff alleges facts that could establish that he was denied insufficient process. For all of these reasons, he arguably states a cognizable claim for denial of procedural due process.

### B. Substantive Due Process

"The Due Process Clause protects against deprivations of 'life, liberty, or property without due process of law.'" Kirby v. Siegelman, 195 F.3d 1285, 1290 (11th Cir. 1999) (quoting U.S. CONST. AMEND. XIV). The Supreme Court has identified two situations in which a prisoner can be deprived of liberty such that the protection of due process is required: (1) there is a change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court; and (2) the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 1290–91 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

In Sandin, the United States Supreme Court addressed whether the punishment inmate Conner received for a disciplinary violation was sufficient to invoke a liberty interest protected by the Due Process Clause. 515 U.S. at 472. Following a disciplinary conviction, Conner received 30 days' disciplinary segregation in a Special Housing Unit. Id. at 475. After noting that the segregation was a form of punishment, the Court concluded that it was not a dramatic departure from the conditions of Conner's indeterminate sentence. Id. at 485. The Supreme Court held there is no right inherent in the Due Process Clause for an inmate not to be placed in disciplinary segregation nor is there a state-created liberty interest to be free from disciplinary segregation. Id. at 487. The Court determined that the conditions of disciplinary segregation at the prison where Conner was incarcerated were virtually indistinguishable from the conditions of administrative segregation and protective custody. Id. at 486. Also, the Court noted that the conditions of disciplinary segregation were not markedly different from the conditions in general population. Id. The Court concluded that the conditions of disciplinary segregation did not

9

impose an "atypical, significant deprivation in which a State might conceivably create a liberty interest." Id. Thus, the Court determined that Conner was not entitled to due process protection. Id. at 487. The Court observed that this holding was a return to the due process principles of Wolff and Meachum v. Fano, 427 U.S. 215 (1976), which required an inmate to suffer a "grievous loss" before a liberty interest could be found. Id. at 478–83. The Sandin Court ruled that in the future, liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, (citations omitted), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 480, 484; see also Rodgers v. Singletary, 142 F.3d 1252, 1253 (11th Cir. 1998) (affirming that two months' confinement to administrative segregation was not a deprivation of a constitutionally protected liberty interest).

An inmate, therefore, has a liberty interest related to his confinement in segregation only if the state has created a liberty interest through the nature of the conditions. Sandin, 515 U.S. at 487. To determine whether the state has created a liberty interest, courts must look to the nature of the conditions of the confinement in relation to the ordinary incidents of prison life, rather than to the language of the regulations regarding those conditions. Id. at 484; Wallace v. Hamrick, 229 F. App'x 827, 830 (11th Cir. 2007). Courts should also consider the duration of the confinement in segregation when determining if the confinement constitutes an atypical and significant hardship. See Al–Amin v. Donald, 165 F. App'x 733, 738 (11th Cir. 2006); see also Williams v. Fountain, 77 F.3d 372, 374 (11th Cir. 1996).

In the present action, Plaintiff has plausibly alleged that his placement in the Tier II Unit deprives him of a liberty interest. Plaintiff arguably sets forth facts which could lead to the

10

conclusion that the conditions of the Tier II Unit impose an atypical and significant hardship on him relative to the ordinary incidents of prison life. Unlike the inmate in Sandin, Plaintiff plausibly alleges that the conditions in the Tier II Unit are markedly different from the conditions in general population.

For all of these reasons, Plaintiff has alleged sufficient facts for his substantive due process claims to proceed against Defendants.

## IV. Motion for a Preliminary Injunction

Plaintiff has sought preliminary injunctive relief from the Court. (Doc. 1, p. 6.) To be entitled to a preliminary injunction, the movant must show: (1) a substantial likelihood of ultimate success on the merits; (2) an injunction or protective order is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the injunction or protective order would inflict on the non-movant; and (4) the injunction or protective order would not be adverse to the public interest. Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225–26 (11th Cir. 2005). In this Circuit, an "injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to the four requisites." Horton v. City of Augustine, Fla., 272 F.3d 1318, 1326 (11th Cir. 2001).

Plaintiff has failed to make a sufficient showing entitling him to the extraordinary remedy of a preliminary injunction. Specifically, he has failed to show that he has a substantial likelihood of ultimate success on the merits of his claims. Accordingly, the Court should **DENY** his request for a preliminary injunction. This is not to say that Plaintiff will not be able to ultimately obtain injunctive relief in this case. However, he is not entitled to such relief at this time.

**CONCLUSION**

For the numerous reasons set forth above, I **RECOMMEND** that the Court **DISMISS** all monetary damages claims against Defendants in their official capacities and all claims for punitive and compensatory damages. Additionally, the Court should **DENY** Plaintiff's claim for preliminary injunctive relief.

The Court **ORDERS** that any party seeking to object to this Report and Recommendation file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the Plaintiff.

## REMAINING CLAIMS AND DEFENDANTS

Plaintiff's allegations in his Complaint arguably state the colorable claims for relief against Defendants under 42 U.S.C. § 1983. Consequently, a copy of Plaintiff's Complaint and a copy of this Order shall be served upon all Defendants by the United States Marshal without prepayment of cost. The Court also provides the following instructions to the parties that will apply to the remainder of this action and which the Court urges the parties to read and follow.

## INSTRUCTIONS TO DEFENDANTS

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs that service be effected by the United States Marshal. Fed. R. Civ. P. 4(c)(3). In most cases, the marshal will first mail a copy of the complaint to the Defendant by first-class mail and request that the Defendant waive formal service of summons. Fed. R. Civ. P. 4(d); Local Rule 4.7. Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver. Fed. R. Civ. P. 4(d)(2). Generally, a defendant who timely returns the waiver is not required to answer the complaint until sixty (60) days after the date that the marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Defendants are hereby granted leave of court to take the deposition of the Plaintiff upon oral examination. Fed. R. Civ. P. 30(a). Defendants are further advised that the Court's standard 140 day discovery period will commence upon the filing of the last answer. Local Rule 26.1. Defendants shall ensure that all discovery, including the Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

In the event that Defendants take the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30. As the Plaintiff will likely not be in attendance for such a deposition, Defendants shall notify Plaintiff of the deposition and advise him that he may serve on Defendants, in a sealed envelope, within ten (10) days of the notice of deposition, written questions the Plaintiff wishes to propound to the witness, if any. Defendants shall present such questions to the witness seriatim during the deposition. Fed. R. Civ. P. 30(c).

## **INSTRUCTIONS TO PLAINTIFF**

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon their attorneys, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendants or their counsel. Fed. R. Civ. P. 5. "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number." Fed. R. Civ. P. 10(a).

Plaintiff is charged with the responsibility of immediately informing this Court and defense counsel of any change of address during the pendency of this action. Local Rule 11.1. Plaintiff's failure notify the Court of a change in his address may result in dismissal of this case.

Plaintiff has the responsibility for pursuing this case. For example, if Plaintiff wishes to obtain facts and information about the case from Defendants, Plaintiff must initiate discovery. See generally, Fed. R. Civ. P. 26, *et seq*. The discovery period in this case will expire 140 days after the filing of the last answer. Local Rule 26.1. Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within

this time period. Local Rule 26.1. Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. Local Rule 26.4.

Interrogatories are a practical method of discovery for incarcerated persons. See Fed. R. Civ. P. 33. Interrogatories may be served only on a party to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are not named as Defendants. Interrogatories are not to contain more than twenty-five (25) questions. Fed. R. Civ. P. 33(a). If Plaintiff wishes to propound more than twenty-five (25) interrogatories to a party, Plaintiff must have permission of the Court. If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorneys for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Fed. R. Civ. P. 26(c); 37(a)(2)(A); Local Rule 26.7.

Plaintiff has the responsibility for maintaining his own records of the case. If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page. **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Local Rule 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which may be initiated by Defendants. Upon no less than five (5) days' notice of the scheduled deposition date, the Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is required to prepare and file his own version of the Proposed Pretrial Order. A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

**ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT**

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen (14) days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Local Rule 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendants' motion. Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within twenty-one (21) days after service of the motion. Local Rules 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact

set forth in the Defendants' statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should Defendants file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should the Defendants' motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the Defendants' statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendants' affidavits will be accepted as true and summary judgment may be entered against the Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 11th day of January, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA