FILED
John E. Triplett, Acting Clerk
United States District Court

By MGarcia at 9:36 am, Nov 02, 2020

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

DEANGELO GALES,

               Plaintiff,

      v.

COMMISSIONER HOMER BRYSON, et al.,

               Defendants.

CIVIL ACTION NO.: 5:15-cv-65

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment. Doc. 61.   Plaintiff filed a Response, doc. 65, and Defendants filed a Reply, doc. 66.   Plaintiff asserts a claim under 42 U.S.C. § 1983, alleging Defendants violated his due process rights under the Fourteenth Amendment.   Doc. 14 at 11.   Specifically, Plaintiff alleges he has been falsely labeled a gang member and indefinitely held in segregated confinement on that basis.   Doc. 23 at 2–3.   Defendants have shown they are entitled to judgment as a matter of law based on the undisputed material facts, and Plaintiff has not demonstrated any genuine issue of material fact. Therefore, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment and enter judgment in Defendants' favor.   I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and **CLOSE** this case and **DENY** Plaintiff *in forma pauperis* status on appeal.

## BACKGROUND

### I.      Plaintiff's Allegations and Procedural History

Plaintiff filed this action concerning certain conditions of his confinement at Ware State Prison ("WSP").   Doc. 1.   Plaintiff asserts Defendants violated his due process rights by placing

him in Tier II administrative segregation ("Tier II") beginning in February 2013 because of his alleged membership in the Goodfellas gang without a hearing.   Doc. 23 at 2.   Plaintiff claims he is not a member of the Goodfellas gang and that his placement in Tier II was and is without basis.   Doc. 65 at 1.

The Magistrate Judge conducted a frivolity review of Plaintiff's Complaint and found Plaintiff stated a non-frivolous due process claim but recommended the Court only allow Plaintiff to pursue injunctive relief and nominal damages.   Doc. 14.   The Court adopted the Magistrate Judge's recommendation without objection.   Doc. 15.   The Court then granted Plaintiff leave to amend his Complaint, doc. 19, which Plaintiff did on March 4, 2016, adding additional Defendants, as well as a First Amendment claim, doc. 23.   Defendants then filed a motion to dismiss, which the Court granted in part and denied in part.   Doc. 54.   Specifically, the Court dismissed Plaintiff's claims for compensatory damages, punitive damages, and attorney's fees, as well as Plaintiff's First Amendment claims and claims for injunctive relief against Defendant Bryson.   Id.   Plaintiff now proceeds on a Fourteenth Amendment due process claim against Defendant Bryson for nominal damages and against all other Defendants for nominal damages and injunctive relief.

The parties completed discovery, and Defendants have now moved for summary judgment.   Doc. 61.   Defendants raise three arguments in favor of summary judgment: (1) a portion of Plaintiff's claims is barred by the statute of limitations; (2) Plaintiff's procedural due process rights were not violated because Plaintiff has no liberty interest in being held with the general population as opposed to in Tier II and Plaintiff was afforded sufficient due process in his assignment to Tier II; and (3) Defendants are entitled to qualified immunity.   Doc. 61-34.

Plaintiff filed a Response to Defendants' Motion, asserting he is not a Goodfellas member and that his permanent placement in Tier II on this basis violates his due process rights. Doc. 65 at 23.   Additionally, Plaintiff asserts his unjustified gang classification, on its own, is also a violation of his rights.   Id. at 19.   Plaintiff claims his gang classification allows him to only be housed with other gang members and has a stigmatizing effect which will follow him for life.   Id.

## II.      Undisputed Material Facts

Defendants submitted a Statement of Material Facts ("Defendants' SMF") in support of their Motion for Summary Judgment, in accordance with Federal Rule of Civil Procedure 56 and Local Rule 56.1.   Doc. 61-1.   Defendants' SMF relies on various affidavits and prison records as support, including: the affidavit of Nathan Brooks, former Unit Manager of WSP's segregation unit, doc. 61-2; the affidavit of Derek McKinney, the Georgia Department of Corrections' ("GDC") Security Threat Group Coordinator, doc. 61-29; the affidavit of Robert Toole, former WSP Warden, doc. 61-33; copies of select portions of the GDC Standard Operating Procedure ("SOP"), docs. 61-3, 61-4, 61-5; numerous documents pertaining to Plaintiff's assignment to Tier II segregation, including notes from segregation hearings, docs. 61-6 through 61-12, and 90-day review forms spanning from January 2014 to June 2017, docs. 61-13 through 61-28.

Plaintiff filed a "Response to Motion for Summary Judgment," in which he addresses each enumerated paragraph in Defendants' SMF, doc. 65 at 1–10, and addresses factual statements in the documents Defendants offered in support of their Motion for Summary Judgment, id. at 11–28, often admitting Defendants' factual allegations.[1]   Although Plaintiff's

---

[1]      Plaintiff submitted a separate "Memorandum of Law," which contains his arguments in opposition to Defendants' Motion for Summary Judgment.   Doc. 65-1.

Response ostensibly attempts to respond to Defendants' SMF, the Response is deficient in various ways.   First, Plaintiff did not support his factual responses with citations to the record, as he was required to do, or show by affidavit or declaration that any facts were unavailable to him.   Fed. R. Civ. P. 56(c)(1), (d).   Indeed, Plaintiff's Response is merely a signed filing, not made under penalty of perjury.   Moreover, many of Plaintiff's statements in his Response are not factual allegations at all (or even rebuttals to factual allegations), but, are instead, arguments, rhetorical questions, and supposition.   See, e.g., Doc. 65 at 2 ("I'm not in prison because of another persons crime, am I?   No!   So I shouldn't be held accountable for others actions. When officers do things that are wrong only that officer is punished, am I right?"); Id.   at 4 ("Why is that my word is good when I'm so call admitting something that is in Defendants favor?   But when I'm admitting that I am not Goodfellas my word means nothing its not good or credible?"); Id. ("If I was so called validated on Sept 20 2013 then the Defendants violated their own rule which would violate my due process."); Id. at 8 ("Because as I have said before the commissioner had a hold on all labelled Goodfellas so no matter what was put on the appeal I couldn't win.   Also it was to vaguely for me to have any defense."); Id. at 19 (arguing that being labelled a gang member is worse than being labelled a sex offender).   While the Court is sympathetic to challenges pro se litigants face, such litigants are still required to conform to procedural rules.   United States v. Theodore, 780 F. App'x 769, 771 (11th Cir. 2019). Accordingly, the Court should not consider those statements in Plaintiff's Response that consist only of unsupported factual allegations, arguments, rhetorical questions, or supposition.[2]

---

[2]       The Court further notes the allegations in Plaintiff's Complaint are not to be considered in resolving Defendants' Motion for Summary Judgment.   See Chambliss v. Buckner, 804. F. Supp. 2d 1240, 1248 (M.D. Ala. 2011) ("Allegations in an unsworn complaint are not evidence for purposes of summary judgment and, thus, cannot be considered.") (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).

After reviewing the parties' submissions, the Court identifies the following undisputed, material facts for the purposes of evaluating Defendants' Motion for Summary Judgment: Beginning in 2013, the GDC established a standing policy of assigning all Goodfellas gang members to administrative segregation, later deemed Tier II segregation.   Doc. 61-1 at 3.   The GDC implemented this policy based on the Goodfellas' history of violence across the state prison system and the likelihood that such violence would continue.   Id. at 4–5.   Plaintiff was placed in Tier II segregation on February 26, 2013, as a suspected member of the Goodfellas gang.   Id. at 4–5.   GDC investigators validated Plaintiff's gang membership on September 20, 2013, based on his alleged self-admission, use of gang language, and association with another gang member.   Id. at 5.   In protesting his assignment to segregation, Plaintiff wrote in an October 2013 appeal, "I'm being discriminated against just because I am part of something.   No other organization is being put in this program."   Id.   In a July 2014 appeal, Plaintiff wrote, "I'm being discriminated against because I'm (GF) . . . ."   Id.   In 2015, while investigating Plaintiff's claim he was not a Goodfellas member, investigators found a photo album in his locker box which contained the statements, "GF Still Standing," and "GF to the Def [sic] of Me." Id.   GDC officials informed Plaintiff he could renounce his Goodfellas membership, but Plaintiff would not sign the renunciation form.   Id.

GDC SOP IIB09-0001, provided by Defendants, details the conditions of Tier II administrative segregation when Plaintiff first arrived there in February 2013.[3]   Doc. 61-3 at 6. "Cells shall be well ventilated, adequately lighted, appropriately heated and maintained in a sanitary condition at all times.   All cells shall be equipped with beds which may be securely

---

[3]      Plaintiff did not submit any supported factual allegations regarding the conditions of administrative segregation, or, more specifically, Tier II.   Thus, the undisputed material facts concerning the conditions of Tier II and administrative segregation, generally, are taken from Defendants' SMF and the materials supporting Defendants' SMF.

fastened to the wall or floor."   Id.   "Cells in Administrative Segregation shall be equipped and furnished in a manner similar to cells in the general population."   Id.   "Each inmate/probationer shall be provided the same opportunities for personal hygiene available to the general population, except that an inmate/probationer may be limited to showering and shaving three (3) times per week."   Id.   "Food provided inmates in Administrative Segregation shall be the same quality and quantity as that provided in the general population."   Id.   "Inmates/Probationers may order items from the commissary," but such items may be withheld if determined to be a threat.   Id. at 7.   Further, inmates are limited to $60.00 of commissary items.   Id.   "[E]xercise periods shall be available for a minimum of five (5) hours per week, with at least one (1) hour per day on five days.   This exercise shall be outside the cells, unless security or safety considerations dictate otherwise."   Id.   Regarding visiting and correspondence privileges and, presumably, library access, other SOPs, which were not provided to the Court, governed.   Id. at 6.

Effective August 1, 2013, GDC SOP IIB09-003 governed the rest of the time Plaintiff spent in Tier II administrative segregation before filing his Complaint.   Doc. 61-4.   The later SOP established three progressive phases through which inmates in administrative segregation could pass based on his behavior and ability to adjust.   Id. at 5.   Many of the conditions and privileges matched the prior SOP, but there were some exceptions: (1) each offender must be provided the opportunity for personal hygiene three times per week; (2) food provided to offenders must be the same quality and quantity as that provided in the general population; (3) if an offender is placed in a moderated-cell/strip cell, current GDC SOP IIB08-0005 and Post Orders will govern what bedding supplies are provided;[4] (4) offenders will receive the services of a counselor and Mental Health counselor as appropriate/required; (5) offenders will be offered

---

[4]     GDC SOP IIB08-0005 was not submitted to the Court.

a minimum of five hours per week of exercise, which must be outside the cells unless security, safety, or inclement weather considerations dictate otherwise; (6) telephone calls are limited by phase assignment;[5] (7) regarding visitation: (a) Phase 1 prisoners were permitted one monthly, no-contact visit with a maximum of two visitors for up to two hours; (b) Phase 2 prisoners were permitted two non-contact visits per month with two visitors lasting two hours; and (c) Phase 3 prisoners were allowed three visits per month with two visitors lasting two hours each; and (8) all inmates are permitted access to the law library, although the method of access is not described.  Id. at 10–11.

The GDC updated its Tier II Administrative Segregation SOP once again in April 2016, but the description of privileges and conditions of inmates in administrative segregation remained the same in all material aspects.  Doc. 61-5 at 7–9.  Due to his continued gang classification, Plaintiff remains in Tier II administrative segregation.

## LEGAL STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.   However, there must exist a conflict in substantial evidence to pose a jury question."  Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).   "If the evidence [produced by the nonmoving party] is merely colorable or is not significantly probative summary judgment

---

[5]      A description of how telephone privileges were limited by Phase has not been provided to the Court.

must be granted.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242 at 249 (1986) (citations

omitted).

The moving party bears the burden of establishing that there is no genuine dispute as to

any material fact and that he is entitled to judgment as a matter of law.   See Williamson Oil Co.,

Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).   Specifically, the moving

party must identify the portions of the record which establish that there are no "genuine

dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law."

Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).   When the nonmoving party would

have the burden of proof at trial, the moving party may discharge his burden by showing that the

record lacks evidence to support the nonmoving party's case or that the nonmoving party would

be unable to prove his case at trial.   See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23

(1986)).   In determining whether a summary judgment motion should be granted, a court must

view the record and all reasonable inferences that can be drawn from the record in a light most

favorable to the nonmoving party.   Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County,

630 F.3d 1346, 1353 (11th Cir. 2011).

## DISCUSSION

Plaintiff's remaining claim at this stage of litigation is for an alleged violation of his

procedural due process rights under the Fourteenth Amendment.[6]   Doc. 54.

---

[6]      The Magistrate Judge, in a January 11, 2016 Order, permitted Plaintiff to proceed on claims for
violations of his substantive and procedural due process rights.   Doc. 13 at 8–11.   However, upon further
review, it is clear Plaintiff does not state a substantive due process violation.   The docket and record
evidence show the only claim before the Court is Plaintiff's procedural due process claim based on the
deprivation of liberty due to his continued placement in Tier II administrative segregation allegedly
without a valid basis.   Indeed, the parties' filings up to this point indicate a mutual understanding that
only procedural, not substantive, due process is at issue.   Docs. 61-34, 65.   Although Plaintiff does not
specify procedural or substantive due process in his Response to the Motion for Summary Judgment,
Plaintiff's references to due process are in connection to the deprivation of a liberty interest and, therefore,

## I.  Plaintiff's Procedural Due Process Claim

Defendants seek summary judgment on Plaintiff's procedural due process claim on three grounds: (1) they argue any claims arising from before August 17, 2013 are barred by the statute of limitations; (2) Plaintiff's procedural due process rights were not violated because Plaintiff has no liberty interest in being held with the general population as opposed to in Tier II, Plaintiff was afforded sufficient due process in his assignment to Tier II, and Plaintiff had no liberty interest in not being labelled a gang member; and (3) Defendants are entitled to qualified immunity.   Docs. 61-34, 66.   Defendants argue the undisputed material facts show Tier II confinement and gang classification do not impose atypical and significant hardships relative to the general prison population.

Construing Plaintiff's filings broadly, he contends his procedural due process rights have been violated in two ways: first, his continued, and allegedly improper, placement in Tier II; and second, his allegedly false affiliation as a gang member.   Notably, Plaintiff commits a significant portion of his briefing to arguing he is not, in fact, a Goodfellas member and has never been a member of the gang.   However, the Court need not resolve that issue, because, as explained below, Defendants are entitled to summary judgment on Plaintiff's claims for other

---

reference to procedural due process (i.e., a <u>Sandin</u> claim).   Doc. 65.   In any case, a substantive due process claim here, based on a fundamental right to be free from administrative segregation from the prison's general population, would fail as a matter of law.   <u>See</u> <u>Hewitt v. Helms</u>, 459 U.S. 460, 467 (1983), *receded from on other grounds by* <u>Sandin v. Conner</u>, 515 U.S. 472 (1995) ("[L]awfully incarcerated persons retain only a narrow range of protected liberty interest[.]"); <u>Montanye v. Haymes</u>, 427 U.S. 236, 242 (1976) ("As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."); <u>Meachum v. Fano</u>, 427 U.S 215, 224–25 (1976); <u>Lundy v. Cox</u>, No. 5:16-cv-71, 2018 WL 3978181, at *6–7 (S.D. Ga. July 16, 2018) (finding no "objectively, deeply rooted" history and practice to be free from administrative segregation in prison or even segregation with more adverse conditions than the general population).

reasons, regardless of whether Plaintiff is or was a gang member.[7]

### A.      Plaintiff's Placement in Tier II

Section 1983 claims for denial of procedural due process require three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process."   Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003).   "Determining whether one was deprived of liberty presents a unique challenge with prisoners, who are already deprived of their liberty in the ordinary understanding of the word." Kirby v. Siegelman, 195 F.3d 1285, 1290 (11th Cir. 1999); see also Jacoby v. Baldwin County, 835 F.3d 1338, 1346 (11th Cir. 2016) (citing Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999)).   In Sandin v. Conner, the United States Supreme Court rejected tests which determined categorical liberty interests through analysis of the language and structure of the state's laws and policies.   515 U.S. 472, 483–85 (1995).   Rather, the Supreme Court held that, in evaluating whether a due process liberty interest exists, courts should examine the conditions of confinement, not the language or structure of the state law or the prison's grievance policies.   Id.

---

[7]        The Court does, however, note Plaintiff's claim that he was not a member of the Goodfellas gang appears to be blatantly contradicted by the record.   See Doc. 61-29 at 6, Aff. Derek McKinney (stating Plaintiff admitted he was a Goodfellas member and that Plaintiff was observed affiliating with a known Goodfellas member and using Goodfellas signs and greetings); Doc. 61-11 at 2 ("This is not fair.   I'm being discriminated against just because I'm a part of something.   No other organization is being put in this this program just because of who they belong to . . . ."); Doc. 61-16 at 2, Attach. 3, ("I'm been[sic] discriminated against because I'm (GF) . . . ."); Doc. 61-32 (finding a photo album in Plaintiff's locker box containing the statements, "GF Still Standing," and "GF to the Def[sic] of Me").   A dispute is "genuine," as required to preclude summary judgment, only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.   Washington v. Nat'l Shipping Co. of Saudi Arabia, 374 F. Supp. 3d 1339, 1348 (S.D. Ga. 2019).   Plaintiff could have submitted a sworn affidavit stating he was not a Goodfellas gang member, or he could have filed alongside his Response in opposition documentation wherein he disputes his gang classification.   But he did not, and "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."   Scott v. Harris, 550 U.S. 372, 380 (2007).   Regardless, the Court need not resolve the issue at this time.

The Supreme Court has identified two situations in which a prisoner can be further deprived of his liberty such that due process is required.   Kirby, 195 F.3d at 1290–91.   First, there is a protected due process liberty interest "when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court."   Id.; Sandin, 515 U.S. at 484.   Second, a state-created liberty interest may arise "when the state has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"   Kirby, 195 F.3d at 1291 (quoting Sandin, 515 U.S. at 484); see also Smith v. Deemer, 641 F. App'x 865, 868 (11th Cir. 2016) ("Atypical and significant hardships must also be severe relative to regular prison."); Jacoby, 835 F.3d at 1346–47 ("This test examines the hardship imposed on the inmate relative to the 'basic conditions' of prison life."); Magluta v. Samples, 375 F.3d 1269, 1276 (11th Cir. 2004).   Courts should also consider the duration of the confinement in segregation when determining if the confinement constitutes an atypical and significant hardship.   See Al-Amin v. Donald, 165 F. App'x 733, 738 (11th Cir. 2006).

Plaintiff's primary complaint concerns his continued placement in Tier II administrative segregation.[8]   Plaintiff does not allege, nor has he shown, his placement in Tier II segregation

---

[8]      The GDC has adopted a policy to keep all Goodfellas members in Tier II administrative segregation and releasing them into general population on an inmate-by-inmate basis.   Doc. 61-1 at 3–4. Plaintiff alleges in one filing he has not received forms which allow him to appeal his Tier II administrative segregation placement, doc. 23 at 2, and alleges in a separate filing that he declined to file any appeals because the appeals "are nothing more than a formality and they have no substance." Doc. 65 at 18.   The evidence of record, however, shows Plaintiff has taken advantage of the appeals process.   Plaintiff asserts he received no hearings, doc. 65 at 6, while Defendants assert, and have produced case notes indicating, Plaintiff receives a hearing every 90 days, docs. 61-6 through 61-28.   In fact, the record shows Defendants reviewed Plaintiff's Tier II assignment because Plaintiff gradually progressed through different "phases" within the Tier system.   Doc. 61-2 at 11–12.   Plaintiff's bare assertion that he had no hearings related to administrative segregation is contradicted by the record; thus,

affects the duration of his sentence.   See Sandin, 515 U.S. at 484.   The parties agree that

Plaintiff is subject to certain limitations because of his confinement in Tier II.   Doc. 1-2;

Doc.  61-1; Doc. 65 at 24.   Thus, the issue is whether the GDC's Tier II restrictions and the

lengthy duration of Plaintiff's confinement create a hardship so significant as to constitute a

liberty interest.

"Confinement to administrative segregation, under conditions substantially similar to

those experienced by the general population of the prison," however, "does not implicate liberty

interests . . . ."   Al-Amin, 165 F. App'x at 738.   Thus, courts must determine whether the

conditions in segregated confinement present such a dramatic unfavorable departure from the

basic conditions of an inmate's sentence that an inmate has an independent liberty interest in

their avoidance.   Wilkinson v. Austin, 545 U.S. 209, 223–24 (2005) (citing Sandin, 515 U.S. at

485).

In assessing the severity of the hardships faced by inmates in segregated confinement,

many courts first look to the seminal Supreme Court case, Wilkinson.   In Wilkinson, the Court

held that prisoners had a liberty interest in avoiding confinement in a "Supermax" prison because

the conditions there constituted an atypical and significant hardship.   Id. at 224.   Specifically,

almost all human contact was prohibited, including conversation between cells; a light in the cell

was on for 24 hours per day; exercise was only allowed in a small indoor room; confinement was

indefinite and was only reviewed annually; and placement in the Supermax facility disqualified

otherwise eligible inmates from parole consideration.   Id. at 223–24.   The Supreme Court

explained that, "[w]hile any of these conditions standing alone might not be sufficient to create a

_____

the Court does not adopt Plaintiff's version of the facts on this point for purposes of summary judgment.
Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, and one is
blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt
that version of the facts for purposes of ruling on a motion for summary judgment.").

liberty interest, taken together they impose an atypical and significant hardship within the correctional context."   Id. at 224.

The Eleventh Circuit Court of Appeals considered a similar issue in Turner v. Warden, GDCP, 650 F. App'x 695 (11th Cir. 2016).   In Turner, a prisoner-plaintiff asserted a procedural due process claim concerning his assignment to Georgia State Prison's SMU (special management unit).   The court concluded the SMU conditions were similar to those in the general population, noting the following SMU conditions:

> Plaintiff regularly received meals and five hours of outdoor recreation time each week.   He was allowed to shower three times per week.   Unless he was in the most restrictive wing, he was allowed to have his personal property and in some wings even had a television in his cell.   Plaintiff was not denied human contact and even received visitation on the weekends.

Id. at 700.   The court held there was "no combination of facts demonstrating that [plaintiff's] incarceration in the SMU [special management unit] imposed an atypical and significant hardship compared to ordinary prison."   Id. at 701.   As a result, the court held the plaintiff had no state-created liberty interest in avoiding confinement in the SMU, and affirmed the trial court's grant of summary judgment to defendant on the claim.   Id.

In another Eleventh Circuit case, the court discussed, briefly, conditions of confinement, assuming the conditions imposed an atypical and significant hardship.   DelGiudice v. Primus, 679 F. App'x 944, 948 (11th Cir. 2017).   There, the plaintiff alleged, in response to a motion to dismiss, the following:

> [H]e had been in SMU for over three years; the SMU cells were 60 square feet; he was limited to recreation two times a week, showers three times a week, a phone call once a month, and cell cleaning once a week; he was prohibited from attending religious or educational programs, and from associating with other prisoners; and he was deprived of an adequate law library and legal books.

Id.   For the sake of argument, the DelGiudice court assumed the allegations stated an atypical

and significant hardship relative to general population but, ultimately, affirmed the trial court's

dismissal of the claim because plaintiff was afforded the minimum requirements of due process

in his segregation assignment.[9]  Id.

   Considering the conditions presented in <u>Turner</u> and <u>DelGiudice</u> and the Eleventh

Circuit's discussion of those conditions, the undisputed evidence in this case demonstrates that

the conditions of each phase of Tier II at WSP, as experienced by Plaintiff, were not atypical and

significant relative to the general population conditions.   Plaintiff received regular meals and

five hours of outdoor recreation time every week, spending one hour outside each day.   Plaintiff

could wash himself three times a week and was allowed to purchase items from the commissary.

Plaintiff was allowed to make phone calls, albeit a fewer amount than inmates in general

population.   Plaintiff could also have visitors, although with some minimal restrictions.   The

conditions Plaintiff experienced are far less severe than the conditions described in <u>Wilkinson</u> in

<u>DelGiudice</u>.   Plaintiff, in this case, was allowed visitation and outdoor recreation.   Plaintiff

received more frequent recreation and phone calls than the plaintiffs in <u>Wilkinson</u> in <u>DelGiudice</u>.

As in <u>Turner</u>, Plaintiff fails to demonstrate a combination of factors supporting his claim that his

incarceration in Tier II administrative segregation imposed an atypical and significant hardship

compared to the general population.   <u>See also</u> <u>Quintanilla v. Bryson</u>, No. 6:17-cv-4, 2020 WL

1441405, at *9 (S.D. Ga. Mar. 20, 2020) (granting summary judgment to defendant where

undisputed material facts demonstrated the conditions plaintiff experienced while on Tier II at

---

[9]  It is worth noting the <u>DelGiudice</u> plaintiff's three years in segregation impacted the atypical and significant hardship analysis.   679 F. App'x at 948.   Indeed, the Eleventh Circuit noted, "Both the period of time and the severity of the hardships must be taken into consideration."   <u>Id.</u> at 947 (citing <u>Magluta v. Samples</u>, 375 F.3d 1269, 1282 (11th Cir. 2004); <u>see also</u> <u>Conner v. Allen</u>, No. 6:17-CV-10, 2020 WL 2104943, at *12 (S.D. Ga. May 1, 2020) (discussing the significance of the duration of administrative segregation in assessing whether a hardship is atypical and significant), *report and recommendation adopted*, <u>Conner v. Allen</u>, 2020 WL 3163292 (S.D. Ga. June 12, 2020).

Georgia's Smith State Prison did not constitute an atypical and significant hardship relative to the incidents of ordinary prison life); Maddox v. Owens, No. 5:15-cv-36, 2018 WL 1513671, at *8 (M.D. Ga. Mar. 27, 2018) ("[T]he Court finds there is no material issue as to whether the conditions Maddox faced in [Tier II at] Macon State Prison, taken together, do not rise to the level of an 'atypical and significant hardship within the correctional context.'")   Consequently, Plaintiff had no liberty interest in avoiding confinement in Tier II.

Although Plaintiff's privileges are generally decreased due to his placement in Tier II administrative segregation, Plaintiff still has recreation time and phone access and is permitted visitors during designated times, akin to the Turner plaintiff and unlike the plaintiff in Wilkinson. Taken all together, the undisputed facts of Plaintiff's conditions of confinement in Tier II segregation do not impose an atypical and significant hardship compared to the general population.

Moreover, even if Plaintiff had a cognizable liberty interest, the undisputed, material facts in this case demonstrate he received adequate due process.   Procedural due process calls for "such procedural protections as the particular situation demands."   Gilbert v. Homar, 520 U.S. 924, 930 (1997).   The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.   Mathews v. Eldridge, 424 U.S. 319, 334 (1976).   Here, Plaintiff was afforded the required due process.   Plaintiff received a hearing within 96 hours of his placement into administrative segregations, as well as when he was placed into the Tier II program.   Doc. 61-2 at 5, 13–14, Brooks Aff.   Furthermore, Plaintiff has received a classification review every 90 days, was notified of the review's outcome, and provided an opportunity to respond.   Docs. 61-20, 61-21, 61-22, 61-23, 61-24, 61-25, 61-26. Though Plaintiff vaguely claims certain hearings did not occur and generally contends any

appeal would be fruitless, these allegations are conclusory and not supported with any evidence of record.   Doc. 65 at 6, 8, 12.   Unsupported allegations alone are insufficient to create a genuine issue of material fact and defeat summary judgment.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) ("[I]n the face of the defendant's properly supported motion for summary judgment, the plaintiff could not rest on his allegations . . . to get to a jury without any significant probative evidence tending to support the complaint." (internal citation omitted)). Thus, the uncontroverted evidence in the record supports that Plaintiff has been afforded an opportunity be heard at a meaningful time and in a meaningful manner.   See Upshaw v. McLaughlin, Case No. 5:15-cv-395, 2017 WL 726667, at *7–8 (M.D. Ga. Jan. 31, 2017) (finding, where the plaintiff received an initial hearing and continuous reviews of administrative segregation with the ability to appeal, due process was satisfied).

Plaintiff cites to several non-binding cases in his response in opposition in support of his contention that, "[e]ven in cases involving administrative segregation based upon a prisoner's membership in a gang could give rise to a due process violation."   Doc. 65-1 at 4 (citing Taylor v. Rodriguez, 238 F.3d 188, 194 (2d Cir. 2001); Ayers v. Ryan, 152 F.3d 77, 80–81 (2d Cir. 1998); Hatch v. D.C., 184 F.3d 846, 852 (D.C. Cir. 1999)).   Doc. 65-1 at 4.   However, these cases do not require, or even suggest, a different result in this case.   The courts in Taylor, Ayers, and Hatch all considered procedural due process claims under Sandin but dealt with the specific facts and circumstances of those cases.   In each case, the court recognized a procedural due process claim can arise from assignment to administrative segregation or transfer to another facility (an uncontroversial proposition) but also recognized that whether the particular plaintiff experienced an atypical and significant hardship turned on the specific facts of the case.   In each instance, the appellate court remanded for further proceedings to address the existence of an

atypical and significant hardship based on the specific facts of the case, but the appellate courts did not hold that one existed in any of the cases.   Here, this Court has considered the specific undisputed material facts and has determined that Plaintiff's assignment to Tier II did not constitute an atypical and significant hardship.   Thus, Taylor, Ayers, and Hatch do not suggest a different result.

Plaintiff also cites Koch v. Lewis, 216 F. Supp. 2d 994 (D. Ariz. 2001), another non-binding case, in support of his contention that, "[a] prisoner actions not mere membership must be shown to justify placement in segregation."   Doc. 65-1 at 4.   Plaintiff, however, misapprehends the Koch court's conclusions.   In Koch, the district court found, after conducting a three-day long jury trial, the plaintiff's placement in highly restrictive form of solitary confinement constituted an "atypical hardship and significant hardship" due to the degree and duration of the confinement.   216 F. Supp. 2d at 1000–02.   Then—only after concluding the plaintiff had a liberty interest in not being placed in solitary confinement—the Koch court determined the plaintiff was deprived of evidentiary safeguards mandated by the Due Process Clause by being assigned to solitary confinement based solely on scant evidence produced against him at gang-affiliation validation hearings.   But the Koch court made clear the extreme circumstances of solitary confinement in that case supported its decision and acknowledged assignment to other forms of segregation or shorter terms of solitary confinement based on gang affiliation might be constitutionally permissible.   In contrast, the undisputed material facts in this case demonstrate Plaintiff's assignment to Tier II did not constitute an atypical and significant hardship, and therefore, no liberty interest exists in not being placed in segregation.[10]

---

[10]     The Court also notes that the decision in Koch is of questionable persuasive value, given that it was vacated on other grounds in Koch v. Schriro, 399 F.3d 1099, 1101 (9th Cir. 2005) (vacating the district court's orders as moot when plaintiff was paroled).

Accordingly, there is no need to explore the evidentiary safeguards at issue in <u>Koch</u>, and that case does not support a different result in this case.[11]

In sum, Plaintiff's procedural due process claim related to his Tier II assignment fails because the undisputed facts demonstrate Plaintiff's Tier II assignment in this case has not imposed an atypical and significant hardship on Plaintiff relative to ordinary prison life. Additionally, the undisputed facts demonstrate Plaintiff received all the due process he was owed regarding assignment to Tier II. Plaintiff's citation to inapposite and non-binding authority does not require a different result. For these reasons, Defendants are entitled to summary judgment on Plaintiff's procedural due process claim related to Tier II assignment.

## B.      Plaintiff's Classification as a Gang Member

Plaintiff also asserts Defendants violated his procedural due process rights by falsely labeling him as a Goodfellas gang member. Doc. 65 at 19. Plaintiff argues, "There are major atypical and significant hardship[s] imposed on the Plaintiff because being labeled Goodfella is worst[sic] than being labeled a sex offender because even a sex offender is not locked down solely because of that label." <u>Id.</u> The Court construes this to be a claim by Plaintiff that mere designation (regardless of assignment to administrative segregation) constitutes a violation of his due process rights. Plaintiff's claim fails, however, because there is no liberty interest in not being classified as a gang member.

---

[11]     In addition to the cases discussed above, Plaintiff also relies on <u>Sheley v. Dugger</u>, 833 F.2d 1420, 1427 (11th Cir. 1987), and <u>Perez v. Neubert</u>, 611 F. Supp. 830 (D. N.J. 1985). These cases are factually distinguishable, and, perhaps more importantly, are of very little assistance, given that both cases were decided under the standard for evaluating liberty interests set forth in <u>Hewitt v. Helms</u>, 459 U.S. 460 (1983), which was expressly abandoned in <u>Sandin</u>, 459 U.S. 460. <u>See</u> <u>Magluta v. Samples</u>, 375 F.3d 1269, 1281–82 (11th Cir. 2004) (discussing distinction in <u>Hewitt</u> and <u>Sandin</u> standards and recognizing in applicability of the analysis in <u>Sheley</u> to future cases). Accordingly, the Court does not address the cases further.

Indeed, some classifications can create a liberty interest.   For instance, the Eleventh Circuit Court of Appeals has held that prisoners have a liberty interest "in not being branded a sex offender," unless the prisoner has been convicted of a sex-related crime.   Kirby, 195 F.3d at 1291.   In Kirby, the Eleventh Circuit held the brand of sex offender to be "so severe that it essentially exceeds the sentence imposed by the court."   195 F.3d at 1291 (citing Sandin, 515 U.S. at 484).   Even an inmate convicted of murder retains a "residuum of liberty" that would be infringed by classification as a sex offender because of the stigmatizing effect.   Id. (citing Vitek v. Jones, 445 U.S. 480, 491 (1980)); see also Neal v. Shimoda, 131 F.3d 818, 829 (9th Cir. 1997) ("We can hardly conceive of a state's action bearing more 'stigmatizing consequences' than the labeling of a prison inmate as a sex offender.").   In Kirby, the Eleventh Circuit also recognized the significant stigma associated with mental illness, citing to the Supreme Court's determination in Vitek v. Jones that prisoners have a liberty interest in not being labeled as mentally ill.   Kirby, 195 F.3d at 1291 (citing Vitek, 445 U.S. at 483–86).

The Eleventh Circuit has addressed gang affiliation or classification as a liberty interest independent of an inmate's placement in administrative segregation based on the classification. In analogous circumstances, the Fifth Circuit Court of Appeals concluded inmates have no liberty interest in not being classified as a gang member.   Farr v. Rodriguez, 255 F. App'x 925, 926–28 (5th Cir. 2007).   In Farr, an inmate had been identified as a member of the "Aryan Circle" gang and placed in administrative segregation.   Id.   The Fifth Circuit concluded, "To the extent [plaintiff] alleges a stigma from being classified as a gang member, the classification, without more, is insufficient to raise a constitutional claim," further confirming the plaintiff failed to allege any protected liberty interest.   Id.; see also Clarkson v. McLaughlin, No.

517CV00120, 2017 WL 3584909, at *3 (M.D. Ga. Aug. 18, 2017) (rejecting claim of due

process violation due to erroneous gang affiliation classification).

Here, there is no evidence in the record regarding any actual stigmatizing consequences

of Plaintiff's gang classification—only Plaintiff's unsubstantiated allegations that inmates

carrying the Goodfellas label cannot put in for a transfer, cannot be housed with other inmates

that are not Goodfellas, may only be transported by CERT team members, and his designation

creates a stigma that will follow him once he leaves prison.   Doc. 65 at 19.   Plaintiff did not

support these allegations with any evidence or sworn testimony.   For this reason alone,

Defendants would be entitled to summary judgment on this claim.

Even if the Court were to take Plaintiff's unsubstantiated allegations as true, Plaintiff's

allegations do not rise to the level necessary to implicate a liberty interest.   Plaintiff alleges

Goodfellas gang members are not eligible for transfer, but transfer to less amenable conditions

for non-punitive reasons, like suspected gang affiliation, is well within the terms of ordinary

confinement contemplated by a prison sentence.   See Al-Amin, 165 F. App'x at 738; West v.

Higgins, 346 F. App'x 423, 426 (11th Cir. 2009).   The same is true for Plaintiff's complaints

about being transported only by CERT team members.   Plaintiff's claims about post-release

stigmatization are so threadbare and speculative that they fall short of demonstrating any kind of

liberty interest.   Farr, 255 F. App'x at 926 ("[S]peculative, collateral consequences of prison

administrative decisions do not create constitutionally protected liberty interests." (quoting

Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995)).   In short, the consequences Plaintiff claims to

result from his gang classification are well within the terms of ordinary confinement and cannot

give rise to a liberty interest.   Plaintiff's mere allegations, even taken as true, of consequences relating to gang classification simply do not demonstrate a protected liberty interest.[12]

Based on the material facts before the Court, on which there is no genuine dispute, Defendants are entitled to summary judgment.   It is unnecessary to address the remaining portions of Defendants' Motion for Summary Judgment.   There is no issue left for a finder of fact to consider in this case and, accordingly, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment, doc. 61, and **DISMISS** Plaintiff's Complaint.

## II.   Leave to Appeal *in Forma Pauperis*

Should the Court adopt my recommendation and grant Defendants' Motion for Summary Judgment, the Court should also deny Plaintiff leave to appeal *in forma pauperis*.[13]   Though Plaintiff has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.   Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith.   28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).   Good faith in this context must be judged by an objective standard.   Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).   A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.   See Coppedge v. United States, 369 U.S. 438, 445 (1962).   A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the

---

[12]        Moreover, Plaintiff's stigmatization concerns are not ripe.   Plaintiff has not represented he is due to be released in the foreseeable future; thus, the Court need not consider the effect that any designation might have on him after release.   Waldman v. Conway, 871 F.3d 1283, 1290 (11th Cir. 2017) (holding that a prisoner's challenge of the post-release restrictions imposed by a sex offender designation was not ripe where the prisoner was not due to be released in the foreseeable future).

[13]        A certificate of appealability is not required in this § 1983 action.

legal theories are indisputably meritless.   Neitzke v. Williams, 490 U.S. 319, 327 (1989);

Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).   An *in forma pauperis* action is frivolous

and not brought in good faith if it is "without arguable merit either in law or fact."   Napier, 314

F.3d at 531; see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at

*1–2 (S.D. Ga. Feb. 9, 2009).

     Based on the above analysis of Plaintiff's action and Defendants' Motion for Summary

Judgment, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken

in good faith.   Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal as to

any dismissed claims.

## CONCLUSION

     For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion for

Summary Judgment and enter judgment in Defendants' favor.   I also **RECOMMEND** the Court

**DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and **CLOSE** this

case and **DENY** Plaintiff *in forma pauperis* status on appeal.

     Any objections to this Report and Recommendation shall be filed within 14 days of

today's date.   Objections shall be specific and in writing.   Any objection that the Magistrate

Judge failed to address a contention raised in the Complaint must be included.   Failure to file

timely, written objections will bar any later challenge or review of the Magistrate Judge's factual

findings and legal conclusions.   28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't

Station #4, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020).   To be clear, a

party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions

on appeal by failing to file timely, written objections.   Harrigan, 2020 WL 6039905, at *4; 11th

Cir. R. 3-1.   A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.   Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.   Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 2nd day of November, 2020.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA